IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

CIVIL DIVISION

FILED

SEP 29 2017

J.S. RANKO
PROTHONOTARY

| | | |
|---|---|---|
| CHERYL MARTORANA AND FRANK MARTORANA, HER HUSBAND, | ) ) ) | |
| | ) | No. 2016-4391 |
| Plaintiffs, | ) ) | Type of Pleading: |
| | ) | COMPLAINT IN CIVIL ACTION |
| v. | ) ) | |
| | ) | |
| M AND D TRUCK KINGS, LLC, MIKHAIL | ) | Filed on Behalf of Plaintiffs |
| SKOROKHODOV, ABRAHAM TOURE, AND | ) | Cheryl and Frank Martorana |
| C.H. ROBINSON CO. T/D/B/A C.H. | ) | |
| ROBINSON WORLDWIDE, | ) | |
| | ) | Counsel of Record for This Party: |
| | ) | |
| Defendants. | ) | |
| | ) | Paul A. Tershel, Esquire |
| | ) | Pa. I.D. No. 30444 |
| | ) | |
| | ) | Mary Chmura Conn, Esquire |
| | ) | Pa. I.D. No. 65488 |
| | ) | |
| | ) | Jarrod T. Takah, Esquire |
| | ) | Pa. I.D. No. 208953 |
| | ) | |
| | ) | TERSHEL & ASSOCIATES |
| | ) | Helena Professional Building |
| | ) | 55 South Main Street |
| | ) | Washington, PA 15301 |
| | ) | |
| | ) | |
| | ) | (724) 228-4700 |
| | ) | |
| | ) | |
| | ) | JURY TRIAL DEMANDED |

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

CIVIL DIVISION

| | | |
|---|---|---|
| CHERYL MARTORANA AND FRANK MARTORANA, HER HUSBAND, | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 2016-4391 |
| v. | ) ) ) | |
| M AND D TRUCK KINGS, LLC, MIKHAIL SKOROKHODOV, ABRAHAM TOURE, AND C.H. ROBINSON CO. T/D/B/A C.H. ROBINSON WORLDWIDE, | ) ) ) ) ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

## NOTICE

    YOU HAVE BEEN SUED in court.  IF YOU WISH TO DEFEND against the claims set forth in the following pages, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.

    You are warned that IF YOU FAIL to do so, the case may proceed without you and A JUDGMENT may be entered against you by the court without further notice for any money claimed in the complaint or for any claim or relief requested by the Plaintiff.  YOU MAY LOSE MONEY OR PROPERTY or other rights important to you.

    You should take this paper to your lawyer at once.

If you do not know a lawyer, contact:

Lawyer Referral Service
119 South College Street
Washington, Pa. 15301
(724) 225-6710

If you cannot afford a lawyer, contact:

Southwestern Pennsylvania Legal Aid
10 West Cherry Avenue
Washington, Pa. 15301
(724) 225-6170

_9·29·17_
Date

Jarrod T. Takah, Esquire
*Attorney for Plaintiffs*

2

<u>COMPLAINT IN CIVIL ACTION</u>

AND NOW, come the Plaintiffs, Cheryl Martorana and Frank Martorana, her husband, by and through their undersigned attorneys, **TERSHEL & ASSOCIATES**, Paul A. Tershel, Esquire, Mary Chmura Conn, Esquire, and Jarrod T. Takah, Esquire, and file this Complaint in Civil Action. In support thereof, Plaintiffs aver as follows:

## -Parties-

1.   Plaintiff, Cheryl Martorana (hereinafter "Plaintiff-Wife"), an adult individual, resides at 547 Franklin Avenue, Canonsburg, Washington County, Pennsylvania 15317.

2.   Plaintiff, Frank Martorana (hereinafter "Plaintiff-Husband"), an adult individual, resides at 547 Franklin Avenue, Canonsburg, Washington County, Pennsylvania 15317.

3.   Defendant, M and D Truck Kings, LLC (hereinafter "Defendant-M and D"), is and/or was a Minnesota company and/or business entity, with a principal place of business located at 6880 Hallmark Dr., Eden Prairie, MN 55346. Plaintiffs believe and, therefore, aver that, at all times material hereto, Defendant-M and D is and/or was in the business of shipping and transporting products by truck, tractor, and/or trailer in interstate commerce and/or operates/operated trucks, tractors, and/or trailers to ship and transport products in interstate commerce. Plaintiffs believe and, therefore, aver that Defendant-M and D is and/or was registered as a carrier with the United States Department of Transportation (U.S. DOT) and/or has and/or did have operating authority/privileges from U.S. DOT and/or operates/operated as a motor carrier as defined by the Federal Motor Carrier Safety Regulations (FMCSR). At all material times, Defendant-M and D acts/acted through its actual, authorized, and/or ostensible agents, employees, and/or servants. At all material times, Defendant-M and D regularly

conducts/conducted business throughout the state of Pennsylvania, including Washington County.

4.      Defendant, Mikhail Skorokhodov (hereinafter "Defendant-Skorokhodov"), an adult individual, resides at 6880 Hallmark Dr., Eden Prairie, MN 55346. Plaintiffs believe and, therefore, aver that, at all material times hereto, Defendant-Skorokhodov owned and operated Defendant-M and D from his home address and/or out of his home and/or owned the trucks, tractors, trailers, and/or other equipment that comprised the Defendant-M and D fleet either individually and/or as Defendant M and D. At all times material hereto, Defendant-Skorokhodov regularly conducted business, either individually and/or as Defendant-M and D, throughout the state of Pennsylvania, including Washington County.

5.      Defendant, Abraham Toure (hereinafter "Defendant-Toure"), an adult individual, resides at 1273 Tenth Street, N.W. Apt. 206, New Brighton, MN 55112. Plaintiffs believe and, therefore, aver that, at all material times hereto, Defendant-Toure operated the subject tractor-trailer combination, as described more fully throughout this Complaint, as an actual, authorized, and/or ostensible agent, employee, and/or servant of Defendant-M and D, Defendant-Skorokhodov, and/or Defendant-CHR and/or qualified as the actual, authorized, and/or ostensible agent, employee, and/or servant of a carrier, as defined by the FMCSR.

6.      Defendant, C.H. Robinson Co. t/d/b/a C.H. Robinson Worldwide (hereinafter "Defendant-CHR"), is a Minnesota company and/or business entity, with a principal place of business located at 14701 Charlson Road, Eden Prairie, MN 55347. Plaintiffs believe and, therefore, aver that, at all material times hereto, Defendant-CHR was in the business of shipping and transporting products by truck, tractor, and/or trailer in interstate commerce and/or of operating trucks, tractors, and/or trailers to ship and transport products in interstate commerce

and/or of providing transportation and logistics services to companies that needed to transport products by truck, tractor, and/or trailer and/or of arranging the transport of products by truck, tractor, and/or trailer in interstate commerce.    Plaintiffs believe and, therefore, aver that Defendant-CHR is registered as a carrier with the U.S. DOT and/or has operating authority/privileges from U.S. DOT and/or operated as a motor carrier as defined by the FMCSR.    At all material times, Defendant-CHR acted through its actual, authorized, and/or ostensible agents, employees, and/or servants.    At all material times, Defendant-CHR regularly conducted business across the United States and throughout the state of Pennsylvania, including Washington County.

7.    Plaintiffs believe and, therefore, aver that, at all material times, Defendant-M and D and/or Defendant-Skorokhodov owned the subject tractor-trailer combination involved in the crash, which is described more fully throughout this Complaint.

8.    Plaintiffs believe and, therefore, aver that Defendant-M and D and Defendant-Skorkhodov operated and/or facilitated the operation of the subject tractor-trailer combination in furtherance of its business.

9.    Plaintiffs believe and, therefore, aver that Defendant-CHR arranged for the delivery and/or trip (hereinafter "subject delivery and/or trip"), which resulted in the crash, which is described more fully throughout this Complaint.    Plaintiffs further believe and, therefore, aver that, at all material times, Defendant-CHR had legally accepted and bore responsibility for the subject delivery and/or trip such that it was a carrier and that, when it arranged the subject delivery and/or trip, it did so as a carrier acting as a broker.

10.    Plaintiffs believe and, therefore, aver that, at all material times hereto, Defendants, M and D, Defendant-Skorokhodov, and/or Defendant-CHR, either directly and solely and/or by

and through actual, authorized, and/or ostensible agents, employees, and/or servants, including Defendant-Toure:

      a.  exclusively controlled the subject tractor-trailer combination;

      b.  operated the subject tractor-trailer combination; and/or

      c.  bore responsibility for the operation of the subject tractor-trailer combination.

11.     At all material times hereto, Defendant-M and D, Defendant-Skorokhodov, and/or Defendant-CHR acted through actual, authorized, and/or ostensible agents, employees, and/or servants, including Defendant-Toure, who acted and/or was acting in furtherance of Defendants' business under the actual, apparent, and/or ostensible authority, control, and/or right of control of Defendants and/or in the service of Defendants.

### -Facts-

12.     On March 21, 2016, at approximately 7:36 a.m., in the middle of heavy morning rush hour traffic, Plaintiff-Wife operated her 2013 Honda Accord in an easterly direction on Morganza Road, a highly trafficked road, in Canonsburg, Washington County, Pennsylvania. Plaintiff-Wife lawfully drove on Morganza Road toward its intersection with Weavertown Road.

13.     At the same time, Defendant-Toure operated a 72,600 pound tractor-trailer combination – then consisting of a 2004 Freightliner tractor (VIN No. 1FUJBBCK14LM43682) and a 2012 Utility 3000R Reefer trailer (VIN No. 1UYVS2532CU279030) (heretofore and hereinafter "the subject tractor-trailer combination") – in a northerly direction on Weavertown Road in Canonsburg, Washington County, Pennsylvania. Defendant-Toure had exited Interstate 79 such that he traveled on Weavertown Road toward its intersection with Morganza Road in a downhill orientation.

14.    Plaintiffs believe and, therefore, aver that:

    a.    the 2004 Freightliner was/is the second tractor, operated by Defendant-Toure on the subject delivery and/or trip, that was owned and/or provided to him by Defendants, M and D and Skorokhodov;

    b.    Defendant-Toure departed Minnesota in a tractor (a 2003 Volvo), also owned by Defendants, M and D and Skorokhodov, that broke down due to mechanical problems in Portage, Wisconsin;

    c.    after leaving Portage and less than 24 hours before the subject crash, Defendant-Toure was in a motor vehicle accident in the subject tractor-trailer combination in which he struck a roadside barrier; and

    d.    when he traveled from Portage to Pennsylvania, Defendant-Toure exceeded permissible operator hours, as set forth by federal and state regulation and/or law and that Defendants, M and D, Skorokhodov, and CHR, knew of, should have known of, and/or permitted such conduct, violation, and/or excessive operation.

15.    At the time and place, as described above:

    a.    Plaintiff-Wife had a green light on Morganza Road and lawfully entered its intersection with Weavertown Road.

    b.    Defendant-Toure had a red light on Weavertown Road and failed and/or was unable to stop at its intersection with Morganza Road.

16.    As such, a collision occurred between Plaintiff-Wife's and Defendants' vehicles when, due to Defendants' negligence, carelessness, recklessness, and/or outrageousness, as set forth more fully throughout this Complaint, Defendant-Toure failed to slow down, stop, and/or take other appropriate evasive action and/or was unable to slow down, stop, and/or take other appropriate evasive action due to degraded and/or unsafe brakes and/or braking system about which all Defendants knew or should have known.

17.    As a result, with downhill momentum, Defendant-Toure smashed into the passenger's side of Plaintiff-Wife's vehicle with the subject tractor-trailer combination, which Plaintiffs believe and, therefore, aver weighed 72,600 pounds.

18. After impact, the subject tractor-trailer combination drove Plaintiff-Wife's vehicle across and through the multi-lane Morganza Road-Weavertown Road intersection, up over an earthen embankment, and into/across the Walgreen's parking lot. In all, Defendants' subject tractor-trailer combination shoved Plaintiff-Wife's vehicle approximately 188 feet, 5 inches away from the point of impact.

19. Due to the extreme damage to Plaintiff-Wife's vehicle, emergency personnel were forced to remove her from her vehicle by mechanical means.

20. As a direct and proximate result of the negligence, carelessness, recklessness, and/or outrageousness of Defendants, as set forth more fully throughout this Complaint, Plaintiff-Wife sustained injuries and damages, including, but not limited to, the following, all or some of which may be permanent in nature:

    a. Traumatic brain injury;

    b. Closed head injury;

    c. Concussion;

    d. Post-concussion Syndrome;

    e. Memory loss;

    f. Post-Traumatic Stress Disorder (PTSD);

    g. Lumps and/or hematomas in breasts;

    h. Fractured left thumb;

    i. Torn ligaments in left hand;

    j. Nerve damage in left thumb/hand;

    k. Torn medial meniscus and/or MCL sprain in the left knee;

    l. Knee pain and discomfort;

m.  Bilateral leg swelling;

n.  Impaired vision;

o.  Impaired speech;

p.  Optic disk edema and/or optic nerve hematoma;

q.  Recurring headaches;

r.  Recurring back pain and tightness;

s.  Recurring neck pain and tightness;

t.  Bruising, contusions, hematomas, and/or abrasions;

u.  Sleep disruption, sleep disturbance, and/or inability to sleep;

v.  Concussive, cognitive, and vestibular therapy;

w.  Surgery and therapy due to left thumb fracture, torn hand ligaments, and/or nerve damage in left thumb/hand;

x.  Injections in knees for pain and discomfort release;

y.  Frequent, painful mammograms due to hematomas and/or lumps in breasts;

z.  Necessity for uncomfortable knee brace for stability and pain relief;

aa. Scarring and disfigurement from crash-related injuries and/or treatment thereof;

bb. Loss of enjoyment of life and life's pleasures;

cc. Significant trauma;

dd. Confusion;

ee. Dizziness and decreased awareness;

ff. Pain and suffering;

gg. Past and future lost wages;

hh. Past and future loss of future earning capacity and/or of earnings horizon;

    ii.  Permanent disability and/or partial disability;

    jj.  Inability to return to work in any capacity and/or diminished capacity to return to work;

    kk. Past and future medical bills and expenses;

    ll.  Property damage;

    mm.   Severe shock to the body and/or to the nervous system, anxiety, panic, and emotional distress; and

    nn. Inconvenience and disruption of daily activities.

21.    As a direct and proximate result of the negligence, carelessness, recklessness, and/or outrageousness of Defendants, as set forth more fully throughout this Complaint, Plaintiff-Husband sustained injuries and damages, including, but not limited to, the following, all or some of which may be permanent in nature:

    a.  loss of the love, companionship, society, services, and/or consortium of Plaintiff-Wife;

    b.  medical bills and expenses, due to treatment of Plaintiff-Wife's crash-related injuries.

22.    Plaintiffs generally and Plaintiff-Wife specifically sustained serious injuries, scarring and/or disfigurement, as defined by the Pennsylvania Motor Vehicle Financial Responsibility Law and, therefore, are deemed to have selected the full-tort option for the purposes of this crash and/or have selected and/or are deemed to have a full-tort option under the Pennsylvania Motor Vehicle Financial Responsibility Law.

### -Causes of Action-

#### COUNT I – NEGLIGENCE

#### PLAINTIFFS V. DEFENDANT-M AND D AND DEFENDANT-SKOROKHODOV

23.    Plaintiffs incorporate herein by reference all the preceding paragraphs of this Complaint, as if each and every one were individually set forth herein at length.

24.    All of the injuries and damages, suffered by Plaintiffs, are the direct and proximate result of Defendants' negligence, carelessness, recklessness, and/or outrageousness, in the following particulars:

   a.   Failing to properly maintain and care for its vehicles;

   b.   Failing to regularly inspect its vehicles;

   c.   Failing to discover the degraded and/or unsafe condition of its vehicles generally and of the brakes and/or braking system of the subject tractor-trailer combination specifically;

   d.   Failing to repair the degraded and/or unsafe condition of its vehicles generally and of the brakes and/or braking system of the subject tractor-trailer combination specifically;

   e.   Using degraded and/or unsafe equipment, including the subject tractor-trailer combination,

   f.   Using the subject tractor-trailer combination, which was not road-worthy;

   g.   Improperly salvaging degraded and/or unsafe equipment, including the subject tractor-trailer combination;

   h.   Purchasing and using degraded and/or unsafe equipment, including the subject tractor-trailer combination;

   i.   Negligence in failing to timely and properly inspect, maintain, ensure proper functioning of and/or safe operation of, make necessary repairs, adjustments, and/or replacement of worn, broken, defective and/or damaged parts and/or components of the subject tractor-trailer combination, which Defendants owned, with particular regard to the brakes and/or braking system and its components, including:

      i.   axle 2 right side brake chamber,
     ii.   primary air pressure reservoir,
    iii.   secondary air pressure reservoir,
    iv.   service airline to semi-trailer,
     v.   gladhand connector,
    vi.   the right forward brake chamber, all of which were in dangerous conditions;

j.  Negligence in hiring Defendant-Toure and/or in allowing him to drive despite his past moving traffic violations and/or infractions;

k.  Negligence in hiring Defendant-Toure and/or in allowing him to drive despite the suspension of his license at the time of this crash;

l.  Negligence in failing to properly screen and/or perform background checks on its drivers, including Defendant-Toure, before and after Defendants hired such drivers;

m.  Negligence in failing to properly develop and maintain a driver file for Defendant-Toure;

n.  Negligence in failing to properly drug test or road test Defendant-Toure before hiring;

o.  Negligence in failing to properly perform or have performed inspections which would have revealed the dangerous conditions of the brakes and/or braking system and its components as set out in sub-paragraph (i) above, all of which are incorporated herein;

p.  Negligence in failing to road test the subject tractor-trailer combination to ensure proper operation of the brakes and/or braking system and its components and which would have revealed the dangerous conditions of the brakes and/or braking system and its components as set out in sub-paragraph (i) above, all of which are incorporated herein;

q.  Negligence in failing to hire competent and skilled agents, employees and/or servants in that Defendants' agents, employees, and/or servants did not possess the skill, knowledge, training, education and/or experience required to maintain the subject tractor-trailer combination in safe working order and in compliance with applicable federal and state regulations and/or accepted industry practices;

r.  Negligence in training its agents, employees, and/or servants in that Defendants failed to provide required and needed training to its employees as to the inspection and maintenance required of the subject tractor-trailer

combination, so that the subject tractor-trailer combination was in a safe working order and so as to comply with applicable federal and state regulations and/or accepted industry practices;

s.  Negligence in failing to properly supervise its agents, employees and/or servants, responsible for the inspection and/or maintenance and/or operation of the subject tractor-trailer combination, in that the subject tractor-trailer combination was not in safe working order and not in compliance with applicable federal and state regulations and/or accepted industry practices;

t.  Negligence in failing to ensure that its agents, employees, and/or servants only drove the specified number of hours permitted by state and federal regulations in order to ensure the safety of the driver and others;

u.  Negligence in delivering the subject tractor-trailer combination to Defendant-Toure in an inherently dangerous condition that included:

    i.  degraded brakes and/or braking system;
    ii.  an unsecure service airline and/or gladhand connector;
    iii.  faulty brake chamber(s); and/or
    iv.  faulty air reservoirs.

v.  Negligence per se in violating the FMCSR and/or 75 Pa.C.S. § 4107 (b) (2.1), 75 Pa.C.S. § 4502, and 67 Pa. Code § 175.94, in that the Defendants permitted the operation of subject tractor-trailer combination on Pennsylvania highways despite its faulty brakes and/or braking system and with components that were unsafe and functionally inoperable;

w.  Negligence per se in violating the FMCSR and/or 75 Pa.C.S § 4107 (b.1), in that Defendants permitted Defendant-Toure to drive in excess of the eleven (11) hour limit on daily driving hours required by state and federal regulations and failed to require the drive to take ten (10) hours of off-duty rest;

x.  Ignoring the degraded and/or unsafe condition of its equipment about which Defendants knew and/or should have known;

y.  Failing to employ a safety director and/or staff an adequate safety department;

z.  Failing to properly anticipate, plan for and/or prepare for, and/or prevent emergencies and/or equipment failure;

aa. Risking catastrophe and/or recklessly endangering others;

bb. Failing to comply with industry best practices and/or safety standards;

cc. Violating federal and state laws and/or federal and state safety laws;

dd. Violating federal and state safety regulations, including FMCSR; and

ee. Under the doctrine of Res Ipsa Loquitor in that the subject tractor-trailer combination's brake system and its components would not have failed absent Defendants' negligence.

25.     The subject tractor-trailer combination weighed 72,600 pounds – that is, in excess of 36 tons – at the time of the crash.

26.     The dangerous condition of the subject tractor-trailer combination generally and the brakes and/or braking system specifically evidences:

a.   a pattern of neglect;

b.   a failure to inspect and/or maintain the subject tractor-trailer combination; and/or

c.   disregard for the rights and safety of others, including Plaintiffs.

27.     Defendants knew or should have known, through the exercise of reasonable care, that the subject tractor-trailer combination generally and the brakes and/or braking system and its components specifically were in a dangerous condition, broken, out of adjustment, unsafe, worn out, not properly lubricated, and/or in inoperable conditions.

28.     Additionally, Defendants knew or should have known, through the exercise of reasonable care, that Defendant-Toure operated and/or was operating the subject tractor-trailer combination well in excess of the time/work limitations imposed by federal and state regulation and/or law.

29.     By allowing the subject tractor-trailer combination to be operated on the road at significant danger to all others on the road, Defendants acted outrageously, willfully, and wantonly.

30.    As a carrier and/or the actual, authorized, and/or ostensible agent, employee, and/or servant of a carrier, Defendants knew or should have known of the requirement to comply with the FMCSR.

31.    However, Defendants violated the FMCSR generally and in the following specifics:

    a.   49 C.F.R. § 393.40, *et seq.*, which required adequate and/or operational brakes;

    b.   49 C.F.R. §396.7, which prohibits unsafe vehicle operation;

    c.   49 C.F.R. §396.3, which requires proper vehicle inspection, repair, and maintenance;

    d.   49 C.F.R. 392.7, which requires proper vehicle inspections and confirmation that vehicular systems are in "good working order";

    e.   49 C.F.R. §395.3, which imposes limits on operator drive times; and

    f.   49 C.F.R. §392.9a, which prohibits vehicle operation without proper permission, authority, and/or licensing.

32.    The FMCSR aims to promote safety in interstate commerce and to set minimum safety requirements for entities that transport property and persons in interstate commerce.

33.    By violating the FMCSR, Defendants knowingly and consciously disregarded the minimum safety requirements imposed by federal regulation and/or law and knowingly and consciously disregarded the rights and safety of others, including Plaintiffs.

34.    As a direct and proximate result of the Defendants' negligence, carelessness, recklessness, and outrageousness, Plaintiffs have suffered those injuries and damages, as set forth more fully throughout this Complaint.

35.    In addition, Defendants falsified and/or manipulated service and travel data and/or failed to maintain accurate service and travel data.

36.    After the subject crash, Defendants negligently and/or intentionally spoliated evidence by failing to make both the tractor and the trailer available for inspection by Plaintiffs. Instead of preserving evidence for a complete investigation, Defendants and/or Defendants' actual, authorized, and/or ostensible agents, employees, and/or servants, picked up the subject trailer after the crash and discarded it and/or otherwise made such trailer unavailable to Plaintiffs for inspection.

Due to such negligent and/or intentional spoliation, Plaintiffs seek appropriate sanctions against Defendants including, but not limited to:

   a.   Preclusion of ability to assert defenses to Plaintiffs' claims;

   b.   Preclusion of ability to call witnesses in defense of Plaintiffs' claims;

   c.   Exclusion of evidence in support of defenses to Plaintiffs' claims;

   d.   Adverse inference jury instructions against Defendants; and

   e.   Entry of judgment against Defendants.

WHEREFORE, based on the foregoing, Plaintiffs demand *compensatory* and *punitive damages* against Defendants, in an amount in excess of Fifty-Thousand Dollars ($50,000), plus interest and costs.

## COUNT II – VICARIOUS/AGENCY LIABILITY

### PLAINTIFFS V. DEFENDANT-M AND D AND DEFENDANT-SKOROKHODOV

37.    Plaintiffs incorporate the previous paragraphs of this Complaint, as though they were set forth completely and at length herein.

38.    Defendant-M and D and Defendant-Skorokhodov are vicariously liable for the negligent, careless, reckless, and/or outrageous acts and/or omissions of Defendant-Toure because:

    a. Defendant-Toure is and/or was the actual, authorized, and/or ostensible agent, employee, and/or servant of Defendants, M and D and Skorokhodov;

    b. Defendants, M and D and Skorokhodov, exercised sufficient control over Defendant-Toure as to constitute a master-servant and/or principal-agent relationship; and/or

    c. Federal and state regulation and/or law impose such vicarious liability on Defendant-M and D and Defendant-Skorokhodov for the negligence, carelessness, recklessness. and/or outrageousness of its agent, employee, and/or servant, Defendant-Toure.

39.    Defendants, M and D and Skorokhodov, held themselves out as the employer and/or principal of Defendant-Toure, the driver, by displaying the company's insignia on the door of its tractor-trailers, including those operated by Defendant-Toure on the subject delivery and/or trip.

40.    All of the injuries and damages, suffered by Plaintiffs, are the direct and proximate results of Defendant-Toure's negligence, carelessness, recklessness, and/or outrageousness – for which Defendants, M and D and Skorokhodov are responsible – in the following particulars:

    a. Operating the subject tractor-trailer combination in a negligent, careless, reckless, and/or outrageous manner;

    b. Traveling at excessive and/or unsafe speeds;

    c. Failing to obey the speed limit;

    d. Failing to obey traffic lights generally and at the intersection of Morganza Road and Weavertown Road specifically;

    e. Running a red light;

f. Failing to stop, slow down, and/or turn aside the subject tractor-trailer combination or to take any other action so as to avoid a collision with Plaintiff-Wife;

g. Failing to yield the right of way to Plaintiff-Wife;

h. Failing to apply the brakes in ample time so as to avoid impact with Plaintiff-Wife's vehicle and/or failing to take other action so as to prevent a collision;

i. Failing to properly control the subject tractor-trailer combination by speeding, running a red light, and failing to stop before striking Plaintiff-Wife's vehicle;

j. Striking Plaintiff-Wife's vehicle;

k. Failing to fully and/or carefully inspect all components of the subject tractor-trailer combination before driving in violation of federal and state regulations and/or law;

l. Failing to properly maintain and care for the subject tractor-trailer combination;

m. Failing to regularly inspect the subject tractor-trailer combination;

n. Failing to discover the degraded and/or unsafe condition of the brakes and/or braking system of the subject tractor-trailer combination;

o. Failing to repair and/or report the degraded and/or unsafe condition of the brakes and/or braking system of the subject tractor-trailer combination;

p. Using degraded and/or unsafe equipment and/or equipment, including the subject tractor-trailer combination;

q. Using the subject tractor-trailer combination, which was not road-worthy;

r. Negligence in failing to timely and properly inspect, maintain, ensure proper functioning of and/or safe operation of, make necessary repairs, adjustments, and/or replacement of worn, broken, defective and/or damaged parts and/or components of the subject tractor-trailer combination, which Defendants owned, with particular regard to the brakes and/or braking system and its components, including:

    i. axle 2 right side brake chamber,
    ii. primary air pressure reservoir,
    iii. secondary air pressure reservoir,
    iv. service airline to semi-trailer,
    v. gladhand conector,

      vi. the right forward brake chamber, all of which were in dangerous conditions;

s. Driving the subject tractor-trailer combination despite past moving traffic violations and/or infractions;

t. Driving the subject tractor-trailer despite a suspended license at the time of this crash;

u. Operating the subject tractor-trailer combination in violation of the FMCSR and/or 75 Pa. C.S. §§ 4107, 4502, and 67 Pa. Code § 175.94;

v. Failing to properly discover, report, repair, and/or remedy safety violations and/or risks on the subject tractor-trailer combination, which was entrusted to him by Defendants;

w. Driving an unsafe tractor-trailer combination generally;

x. Driving an unsafe tractor-trailer combination in violation of federal and state law and/or regulations;

y. Ignoring the degraded and/or unsafe condition of the equipment he operated about which he knew and/or should have known;

z. Failing to properly anticipate, plan for and/or prepare for, and/or prevent emergencies and/or equipment failure;

aa. Risking catastrophe and/or recklessly endangering others;

bb. Failing to comply with industry best practices and/or safety standards;

cc. Violating federal and state laws and/or federal and state safety laws;

dd. Violating federal and state safety regulations, including the FMCSR; and

ee. Under the doctrine of Res Ipsa Loquitor in that the subject tractor-trailer combination's brake system and its components would not have failed absent Defendants' negligence.

41. The subject tractor-trailer combination weighed 72,600 pounds – that is, in excess of 36 tons – at the time of the crash.

42. The dangerous condition of the subject tractor-trailer combination generally and the brakes and/or braking system specifically evidences:

a. a pattern of neglect;

    b.  a failure to inspect and/or maintain the subject tractor-trailer combination; and/or

    c.  disregard for the rights and safety of others, including Plaintiffs.

43.    Defendant-Toure – and, therefore, Defendants, M and D and/or Skorokhodov – knew or should have known, through the exercise of reasonable care, that the subject tractor-trailer combination generally and the brakes and/or braking system and its components specifically were in a dangerous condition, broken, out of adjustment, unsafe, worn out, not properly lubricated and/or in inoperable conditions.

44.    By allowing the subject tractor-trailer combination to be operated on the road and/or by operating the subject tractor-trailer combination at significant danger to all others on the road, Defendants acted outrageously, willfully, and wantonly.

45.    As a carrier and/or the actual, authorized, and/or ostensible agent, employee, and/or servant of a carrier, Defendants knew or should have known of the requirement to comply with the FMCSR.

46.    However, Defendants violated the FMCSR generally and in the following specifics:

    a.  49 C.F.R. § 393.40, et seq., which requires adequate and/or operational brakes;

    b.  49 C.F.R. §396.7, which prohibits unsafe vehicle operation;

    c.  49 C.F.R. §396.3, which requires proper vehicle inspection, repair, and maintenance;

    d.  49 C.F.R. 392.7, which requires proper vehicle inspections and confirmation that vehicular systems are in "good working order";

    e.  49 C.F.R. §395.3, which imposes limits on operator drive times; and

       f.  49 C.F.R. §392.9a, which prohibits vehicle operation without proper permission, authority, and/or licensing.

47.    The FMCSR aims to promote safety in interstate commerce and to set minimum safety requirements for entities that transport property and persons in interstate commerce.

48.    By violating the FMCSR, Defendants knowingly and consciously disregarded the minimum safety requirements imposed by federal regulation and/or law and knowingly and consciously disregarded the rights and safety of others, including Plaintiffs.

49.    As a direct and proximate result of the Defendants' negligence, carelessness, recklessness, and outrageousness, as well as the negligence, carelessness, recklessness, and outrageousness of Defendant-Toure, for whom Defendants are responsible, Plaintiff has suffered those injuries and damages, as set forth more fully throughout this Complaint.

50.    In addition, Defendants falsified and/or manipulated service and travel data and/or failed to maintain accurate service and travel data.

51.    After the subject crash, Defendants negligently and/or intentionally spoliated evidence by failing to make both the tractor and the trailer available for inspection by Plaintiffs. Instead of preserve evidence for a complete investigation, Defendants and/or Defendants' actual, authorized, and/or ostensible agents, employees, and/or servants, picked up the subject trailer after the crash and discarded it and/or otherwise made such trailer unavailable to Plaintiffs for inspection.

    Due to such negligent and/or intention spoliation, Plaintiffs seek appropriate sanctions against Defendants including, but not limited to:

    a.  Preclusion of ability to assert defenses to Plaintiffs' claims;

    b.  Preclusion of ability to call witnesses in defense of Plaintiffs' claims;

    c.  Exclusion of evidence in support of defenses to Plaintiffs' claims;

    d. Adverse inference jury instructions against Defendants; and

    e. Entry of judgment against Defendants.

WHEREFORE, based on the foregoing, Plaintiff demands *compensatory* and *punitive damages* against Defendant, in an amount in excess of Fifty-Thousand Dollars ($50,000), plus interest and costs.

### COUNT III - NEGLIGENCE

### PLAINTIFFS V. DEFENDANT-CHR

52. Plaintiffs incorporate herein by reference all the preceding paragraphs of this Complaint, as if each and every one were individually set forth herein at length.

53. All of the injuries and damages, suffered by Plaintiffs, are the direct and proximate result of Defendant-CHR's negligence, carelessness, recklessness, and/or outrageousness in the following particulars:

    a. Negligence in hiring Defendant-M and D and/or Defendant-Skorokhodov;

    b. Failing to hire a competent carrier;

    c. Hiring an incompetent carrier;

    d. Failing to exercise reasonable care and/or due diligence when hiring a carrier;

    e. Failing to hire a carrier with safe and/or fully functioning equipment;

    f. Hiring a carrier with unsafe and/or inoperable equipment;

    g. Negligence in hiring a carrier with a limited fleet;

    h. Negligence in hiring a carrier with a limited number of agents, employees, and/or servants;

    i. Unnecessarily exposing others, including Plaintiffs, to an unqualified carrier;

j.   Failing to hire a carrier with the necessary knowledge, skill, expertise, and available equipment to safely perform the subject delivery and/or trip;

k.   Failing to appropriately vet Defendants, M and D and Skorokhodov;

l.   Failing to intervene and/or prevent and/or stop safety violations and/or violations of federal and state regulation and law when Defendant learned of and/or should have learned of the same;

m.   Hiring Defendants, M and D and Skorokhodov, when other, more qualified carriers exist and were available;

n.   Failing to implement and abide by a system of assessing and/or monitoring carrier fitness;

o.   Failing to ensure that its carriers, including Defendants, M and D and Skorokhodov, only used safe, road-worthy equipment;

p.   Hiring carriers, including Defendants, M and D and Skorokhodov, without verifying safety records;

q.   Hiring carriers, including Defendants, M and D and Skorokhodov, without proper safety systems, programs, and/or policies;

r.   Failing to properly anticipate, plan for and/or prepare for, and/or prevent emergencies and/or equipment failure;

s.   Ignoring the degraded and/or unsafe condition of the tractor-trailer combination and/or fleet, used by Defendants, M and D, Skorokhodov, and Toure, about which it knew and/or should have known;

t.   Permitting Defendants, M and D, Skorokhodov, and Toure, to operate the tractor-trailer combination in an unsafe condition and/or in a condition and manner that violated federal and state regulation and law;

u.   Risking catastrophe and/or recklessly endangering others;

v.   Failing to comply with industry best practices and/or safety standards;

w.   Violating federal and state laws and/or federal and state safety laws;

x.   Violating federal and state safety regulations, including the FMCSR;

y.   Under the doctrine of Res Ipsa Loquitor in that the subject tractor-trailer combination's brake system and its components would not have failed absent Defendants' negligence; and

z.   Placing profit and business interests above safety by hiring and/or working with Defendant, M and D and Skorokhodov.

54.    The subject tractor-trailer combination weighed 72,600 pounds – that is, in excess of 36 tons – at the time of the crash.

55.    The dangerous condition of the subject tractor-trailer combination generally and the brakes and/or braking system specifically evidences:

a.   a pattern of neglect;

b.   a failure to inspect and/or maintain the subject tractor-trailer combination; and/or

c.   disregard for the rights and safety of others, including Plaintiffs.

56.    Defendant-CHR knew or should have known, through the exercise of reasonable care, that it was working with a company and/or individuals that failed to comply with federal and state safety laws and regulations and/or that the brakes and/or braking system and its components of the subject tractor-trailer combination were in a dangerous condition, broken, out of adjustment, unsafe, worn out, not properly lubricated and/or in inoperable condition.

57.    By allowing the subject tractor-trailer combination to be operated on the road at significant danger to all others on the road, Defendants acted outrageously, willfully, and wantonly.

58.    As a carrier, Defendants knew or should have known of the requirement to comply with the FMCSR.

59.    However, Defendants violated the FMCSR generally and in the following specifics:

a.   49 C.F.R. § 393.40, et seq., which requires adequate and/or operational brakes;

b. 49 C.F.R. §396.7, which prohibits unsafe vehicle operation;

c. 49 C.F.R. §396.3, which requires proper vehicle inspection, repair, and maintenance;

d. 49 C.F.R. 392.7, which requires proper vehicle inspections and confirmation that vehicular systems are in "good working order";

e. 49 C.F.R. §395.3, which imposes limits on operator drive times; and

f. 49 C.F.R. §392.9a, which prohibits vehicle operation without proper permission, authority, and/or licensing.

60. The FMCSR aims to promote safety in interstate commerce and to set minimum safety requirements for entities that transport property and persons in interstate commerce.

61. By violating the FMCSR, Defendants knowingly and consciously disregarded the minimum safety requirements imposed by federal regulation and/or law and knowingly and consciously disregarded the rights and safety of others, including Plaintiffs.

62. As a direct and proximate result of the Defendants' negligence, carelessness, recklessness, and outrageousness, Plaintiffs have suffered those injuries and damages, as set forth more fully throughout this Complaint.

63. In addition, Defendants falsified and/or manipulated service and travel data and/or failed to maintain accurate service and travel data.

64. After the subject crash, Defendants negligently and/or intentionally spoliated evidence by failing to make both the tractor and the trailer available for inspection by Plaintiffs. In fact, rather than preserve evidence for a complete investigation, Defendants and/or Defendants' actual, authorized, and/or ostensible agents, employees, and/or servants, picked up the subject trailer after the crash and discarded it and/or otherwise made such trailer unavailable to Plaintiffs for inspection.

Due to such negligent and/or intentional spoliation, Plaintiffs seek appropriate sanctions against Defendants including, but not limited to:

    a.   Preclusion of ability to assert defenses to Plaintiffs' claims;

    b.   Preclusion of ability to call witnesses in defense of Plaintiffs' claims;

    c.   Exclusion of evidence in support of defenses to Plaintiffs' claims;

    d.   Adverse inference jury instructions against Defendants; and

    e.   Entry of judgment against Defendants.

WHEREFORE, based on the foregoing, Plaintiff demands *compensatory* and *punitive damages* against Defendant, in an amount in excess of Fifty-Thousand Dollars ($50,000), plus interest and costs.

## COUNT IV – VICARIOUS LIABILITY

### PLAINTIFFS V. DEFENDANT-CHR

65.   Plaintiffs incorporate the previous paragraphs of this Complaint, as though they were set forth completely and at length herein.

66.   Plaintiffs believe and, therefore, aver that Defendant-CHR arranged for the subject delivery and/or trip.

67.   Plaintiffs further believe and, therefore, aver that Defendant-CHR had legally accepted and bore responsibility for the subject delivery and trip.

68.   At all times material hereto, Defendant-CHR was a carrier acting as a broker. In fact, the transactional documents for the subject delivery and/or trip:

    a.   list Defendant-CHR on nearly all bills of lading; and

    b.   specify Defendant-CHR as "carrier" and/or "shipping method."

69.     As such, Defendant-CHR held itself out to customers and others as the party responsible for the shipment and/or the subject delivery and/or trip by including company information and managerial contact information on bills of lading, transactional documents, and/or other documents involved in shipment of products.

70.     Therefore, federal and state regulation and law imposes liability on Defendant-CHR for the negligence, carelessness, recklessness, and/or outrageousness of Defendant-M and D, Defendant-Skorokhodov, and Defendant-Toure.

71.     Further, Defendant-CHR exercised sufficient control over Defendant-Toure, Defendant-M and D, and Defendant-Skorokhodov so as to constitute a master-servant and/or principal-agent relationship, by:

    a.  Mandating that the driver follow stringent policies set forth by Defendant when carrying out deliveries, including but not limited to:

        i.    obtaining load requirements from Defendant,
        ii.   checking in with Defendant throughout delivery,
        iii.  providing tracking updates,
        iv.   informing Defendant of arrival and/ or departure within thirty (30) minutes, and
        v.    calling to check in once per day;

    b.  Setting specific pick-up and delivery times for drivers;

    c.  Specifying that driver compensation may be related to adhering to pick-up and delivery times;

    d.  Specifying specific routes that the driver must take when making deliveries;

    e.  Listing managerial contact information and company contact information for Defendant on all documents in delivery process;

    f.  Keeping of activity logs for each delivery; and

    g.  Monitoring the delivery status and/or delivery progress via GPS and/or other similar electronic oversight.

72. Defendant-CHR exercised control over all and/or many aspects of the shipment process through the implementation of specific schedules for truck companies and/or drivers, including Defendants, mandated notification systems, kept meticulous records, and/or set goal-oriented compensation systems.

73. As a result of the foregoing, Defendant-CHR is vicariously liable for the negligence, carelessness, recklessness, and/or outrageousness of its actual, authorized, and/or ostensible agents, employees, and/or servants, including Defendant-Toure, as well as Defendant-M and D and Defendant-Skorokhodov, whose negligence, carelessness, recklessness, and/or outrageousness includes:

    a. Operating the subject tractor-trailer combination in a negligent, careless, reckless, and/or outrageous manner;

    b. Traveling at excessive and/or unsafe speeds;

    c. Failing to obey the speed limit;

    d. Failing to obey traffic lights generally and at the intersection of Morganza Road and Weavertown Road specifically;

    e. Running a red light;

    f. Failing to stop, slow down, and/or turn aside the subject tractor-trailer combination or to take any other action so as to avoid a collision with Plaintiff-Wife;

    g. Failing to yield the right of way to Plaintiff-Wife;

    h. Failing to apply the brakes in ample time so as to avoid impact with Plaintiff-Wife's vehicle and/or failing to take other action so as to prevent a collision;

    i. Failing to properly control the subject tractor-trailer combination by speeding, running a red light, and failing to stop before striking Plaintiff-Wife's vehicle;

    j. Striking Plaintiff-Wife's vehicle;

    k. Failing to fully and/or carefully inspect all components of the subject tractor-trailer combination before driving in violation of state and federal law and/or safety regulations;

l.  Failing to properly maintain and care for its vehicles generally and the subject tractor-trailer combination specifically;

m.  Failing to regularly inspect its vehicles generally and the subject tractor-trailer combination specifically;

n.  Failing to discover the degraded and/or unsafe condition of its vehicles generally and of the brakes and/or braking system of the subject tractor-trailer combination specifically;

o.  Failing to repair the degraded and/or unsafe condition of its vehicles generally and of the brakes and/or braking system of the subject tractor-trailer combination specifically;

p.  Using degraded and/or unsafe equipment and/or equipment, including the subject tractor-trailer combination;

q.  Using the subject tractor-trailer combination, which was not road-worthy;

r.  Improperly salvaging degraded and/or unsafe equipment;

s.  Purchasing and using degraded and/or unsafe equipment;

t.  Negligence in failing to timely and properly inspect, maintain, ensure proper functioning of and/or safe operation of, make necessary repairs, adjustments, and/or replacement of worn, broken, defective and/ or damaged parts and/or components of the subject tractor-trailer combination, which Defendants owned, with particular regard to the brakes and/or braking system and its components, including:

    i.    axle 2 right side brake chamber,
    ii.   primary air pressure reservoir,
    iii.  secondary air pressure reservoir,
    iv.   service airline to semi-trailer,
    v.    gladhand connector,
    vi.   the right forward brake chamber, all of which were in dangerous conditions;

u.  Driving and/or allowing to be driven the subject tractor-trailer combination despite past moving traffic violations and/or infractions;

v.  Driving and/or allowing to be driven the subject tractor-trailer despite a suspended license at the time of this crash;

w.  Failing to properly discover, report, repair, and/or remedy safety violations and/or risks on the subject tractor-trailer combination;

x. Negligence in hiring Defendant-Toure and/or in allowing him to drive due to his past moving traffic violations and/or infractions;

y. Negligence in hiring Defendant-Toure and/or in allowing him to drive due to the suspension of his license at the time of this crash;

z. Negligence in failing to properly screen and/or perform background checks on its drivers, including Defendant-Toure, before and after Defendant hired such drivers;

aa. Negligence in failing to properly develop and/or maintain a driver file on Defendant-Toure;

bb. Negligence in failing to properly drug test or road test Defendant-Toure before hiring;

cc. Negligence in failing to properly perform or have performed inspections which would have revealed the dangerous conditions of the brakes and/or braking system and its components as set out in sub-paragraph (t) above, all of which are incorporated herein;

dd. Negligence in failing to road test the subject tractor-trailer combination to ensure proper operation of the brake system and its components and which would have revealed the dangerous conditions of the brakes and/or braking system and its components as set out in sub-paragraph (t) above, all of which are incorporated herein;

ee. Negligence in failing to hire competent and skilled agents, employees, and/or servants in that its agents, employees, and/or servants did not possess the skill, knowledge, training, education and/or experience required to maintain the subject tractor-trailer combination in safe working order and in compliance with applicable federal and state regulations and/or accepted industry practices;

ff. Negligence in training its agents, employees, and/or servants in that Defendants failed to provide required and needed training to its agents, employees, and/or servants as to the inspection and maintenance required of the subject tractor-trailer combination, so that the subject tractor-trailer combination was in a safe working order and so as to comply with applicable federal and state regulations and/or accepted industry practices;

gg. Negligence in failing to properly supervise its agents, employees, and/or servants, responsible for the inspection and/or maintenance and/or operation of the subject tractor-trailer combination, in that the subject tractor-trailer

combination was not in safe working order and not in compliance with applicable federal and state regulations and/or accepted industry practices;

hh. Negligence in failing to ensure that its agents, employees, and/or servants are only driving the specified number of hours permitted by federal and state regulations in order to ensure the safety of the driver and others;

ii. Negligence in delivering subject tractor-trailer combination to Defendant-Toure in an inherently dangerous condition that included:

    i. degraded brakes and/or braking system;
    ii. an unsecure service airline;
    iii. faulty brake break chamber(s); and/or
    iv. faulty air reservoirs.

jj. Negligence per se in violating the FMCSR and/or 75 Pa.C.S. § 4107 (b) (2.1), 75 Pa.C.S. § 4502, and 67 Pa. Code § 175.94, in that the Defendants permitted the operation of subject tractor-trailer combination on Pennsylvania highways while operating with a faulty brakes and/or braking system and with components that were unsafe and functionally inoperable;

kk. Negligence per se in violating the FMCSR and/or 75 Pa.C.S § 4107 (b.1), in that Defendants permitted Defendant-Toure to drive in excess of the eleven (11) hour limit on daily driving hours required by state and federal regulations and failed to require the drive to take ten (10) hours of off-duty rest;

ll. Ignoring the degraded and/or unsafe condition of its equipment about which Defendants knew and/or should have known;

mm. Failing to employ a safety director and/or staff an adequate safety department;

nn. Failing to properly anticipate, plan for and/or prepare for, and/or prevent emergencies and/or equipment failure;

oo. Risking catastrophe and/or recklessly endangering others;

pp. Failing to comply with industry best practices and/or safety standards;

qq. Violating federal and state laws and/or federal and state safety laws;

rr. Violating federal and state safety regulations, including the FMCSR; and

ss. Under the doctrine of Res Ipsa Loquitor in that the subject tractor-trailer combination's brake system and its components would not have failed absent Defendants' negligence.

74. The subject tractor-trailer combination weighed 72,600 pounds – that is, in excess of 36 tons – at the time of the crash.

75. The dangerous condition of the subject tractor-trailer combination generally and the brakes and/or braking system specifically evidences:

    a. a pattern of neglect;

    b. a failure to inspect and/or maintain the subject tractor-trailer combination; and/or

    c. disregard for the rights and safety of others, including Plaintiffs.

76. Defendants, including Defendant-CHR, knew or should have known, through the exercise of reasonable care, that the subject tractor-trailer combination generally and the brakes and/or braking system and its components specifically were in a dangerous condition, broken, out of adjustment, unsafe, worn out, not properly lubricated and/or in inoperable conditions.

77. By allowing the subject tractor-trailer combination to be operated on the road at significant danger to all others on the road, Defendants acted outrageously, willfully, and wantonly.

78. As a carrier and/or the actual, authorized, and/or ostensible agent, employee, and/or servant of a carrier, Defendants knew or should have known of the requirement to comply with the FMCSR.

79. However, Defendants violated the FMCSR generally and in the following specifics:

    a. 49 C.F.R. § 393.40, et seq., which requires adequate and/or operational brakes;

    b. 49 C.F.R. §396.7, which prohibits unsafe vehicle operation;

    c.  49 C.F.R. §396.3, which requires proper vehicle inspection, repair, and maintenance;

    d.  49 C.F.R. 392.7, which requires proper vehicle inspections and confirmation that vehicular systems are in "good working order";

    e.  49 C.F.R. §395.3, which imposes limits on operator drive times; and

    f.  49 C.F.R. §392.9a, which prohibits vehicle operation without proper permission, authority, and/or licensing.

80.    The FMCSR aims to promote safety in interstate commerce and to set minimum safety requirements for entities that transport property and persons in interstate commerce.

81.    By violating the FMCSR, Defendants knowingly and consciously disregarded the minimum safety requirements imposed by federal regulation and/or law and knowingly and consciously disregarded the rights and safety of others, including Plaintiffs.

82.    As a direct and proximate result of the Defendants' negligence, carelessness, recklessness, and outrageousness, as well as the negligence, carelessness, recklessness, and outrageousness of Defendant-Toure, Defendant-M and D, and Defendant-Skorokhodov, for whom Defendant-CHR are responsible, Plaintiffs have suffered those injuries and damages, as set forth more fully throughout this Complaint.

83.    In addition, Defendants falsified and/or manipulated service and travel data and/or failed to maintain accurate service and travel data.

84.    After the crash, Defendants negligently and/or intentionally spoliated evidence by failing to make both the tractor and the trailer available for inspection by Plaintiffs. Instead of preserve evidence for a complete investigation, Defendants and/or Defendants' actual, authorized, and/or ostensible agents, employees, and/or servants, picked up the subject trailer after the crash and discarded it and/or otherwise made such trailer unavailable to Plaintiffs for inspection.

Due to such negligent and/or intentional spoliation, Plaintiffs seek appropriate sanctions against Defendants including, but not limited to:

a.  Preclusion of ability to assert defenses to Plaintiffs' claims;

b.  Preclusion of ability to call witnesses in defense of Plaintiffs' claims;

c.  Exclusion of evidence in support of defenses to Plaintiffs' claims;

d.  Adverse inference jury instructions against Defendants; and

e.  Entry of judgment against Defendants.

WHEREFORE, based on the foregoing, Plaintiff demands *compensatory* and *punitive damages* against Defendant, in an amount in excess of Fifty-Thousand Dollars ($50,000), plus interest and costs.

## COUNT V – NEGLIGENCE

### PLAINTIFFS V. DEFENDANT-TOURE

85.    Plaintiffs incorporate herein by reference all the preceding paragraphs of this Complaint, as if each and every one were individually set forth herein at length.

86.    All of the injuries and damages, suffered by Plaintiffs, are the direct and proximate result of Defendant-Toure's negligence, carelessness, recklessness, and/or outrageousness in the following particulars:

a.  Operating the subject tractor-trailer combination in a negligent, careless, reckless, and/or outrageous manner;

b.  Traveling at excessive and/or unsafe speeds;

c.  Failing to obey the speed limit;

d.  Failing to obey traffic lights generally and at the intersection of Morganza Road and Weavertown Road specifically;

e.  Running a red light;

f. Failing to stop, slow down, and/or turn aside the subject tractor-trailer combination or to take any other action so as to avoid a collision with Plaintiff-Wife;

g. Failing to yield the right of way to Plaintiff-Wife;

h. Failing to apply the brakes in ample time so as to avoid impact with Plaintiff-Wife's vehicle and/or failing to take other action so as to prevent a collision;

i. Failing to properly control the subject tractor-trailer combination by speeding, running a red light, and failing to stop before striking Plaintiff-Wife's vehicle;

j. Striking Plaintiff-Wife's vehicle;

k. Failing to fully and/or carefully inspect all components of the subject tractor-trailer combination before driving in violation of state and federal law and/or safety regulations;

l. Failing to properly maintain and care for the subject tractor-trailer combination;

m. Failing to regularly inspect the subject tractor-trailer combination;

n. Failing to discover the degraded and/or unsafe condition of the brakes and/or braking system of the subject tractor-trailer combination;

o. Failing to repair and/or report the degraded and/or unsafe condition of the brakes and/or braking system of the subject tractor-trailer combination;

p. Using degraded and/or unsafe equipment and/or equipment, including the subject tractor-trailer combination;

q. Using the subject tractor-trailer combination, which was not road-worthy;

r. Negligence in failing to timely and properly inspect, maintain, ensure proper functioning of and/or safe operation of, make necessary repairs, adjustments, and/or replacement of worn, broken, defective and/ or damaged parts and/or components of the subject tractor-trailer combination, which Defendants owned, with particular regard to the brakes and/or braking system and its components, including:

     i. axle 2 right side brake chamber,
    ii. primary air pressure reservoir,
   iii. secondary air pressure reservoir,
   iv. service airline to semi-trailer,
    v. gladhand connector,

     vi. the right forward brake chamber, all of which were in dangerous conditions;

s. Driving the subject tractor-trailer combination despite past moving traffic violations and/or infractions;

t. Driving the subject tractor-trailer despite a suspended license at the time of this crash;

u. Operating the subject tractor-trailer combination in violation of the FMCSR and/or 75 Pa. C.S. §§ 4107, 4502, and 67 Pa. Code § 175.94;

v. Failing to properly discover, report, repair, and/or remedy safety violations and/or risks on the subject tractor-trailer combination, which was entrusted to him by Defendants;

w. Driving an unsafe tractor-trailer combination generally;

x. Driving an unsafe tractor-trailer combination in violation of federal and state law and/or regulations;

y. Ignoring the degraded and/or unsafe condition of the tractor-trailer combination about which he knew and/or should have known;

z. Failing to properly anticipate, plan for and/or prepare for, and/or prevent emergencies and/or equipment failure;

aa. Risking catastrophe and/or recklessly endangering others;

bb. Failing to comply with industry best practices and/or safety standards;

cc. Violating federal and state laws and/or federal and state safety laws;

dd. Violating federal and state safety regulations, including the FMCSR; and

ee. Under the doctrine of Res Ipsa Loquitor in that the subject tractor-trailer combination's brake system and its components would not have failed absent Defendants' negligence.

87.    The subject tractor-trailer combination weighed 72,600 pounds – that is, in excess of 36 tons – at the time of the crash.

88.    The dangerous condition of the subject tractor-trailer combination generally and the brakes and/or braking system specifically evidences:

    a.  a pattern of neglect;

    b.  a failure to inspect and/or maintain the subject tractor-trailer combination; and/or

    c.  disregard for the rights and safety of others, including Plaintiffs.

89.    Defendant-Toure knew or should have known, through the exercise of reasonable care, that the subject tractor-trailer combination generally and the brakes and/or braking system and its components specifically were in a dangerous condition, broken, out of adjustment, unsafe, worn out, not properly lubricated and/or in inoperable conditions.

90.    By allowing the subject tractor-trailer combination to be operated on the road and/or by operating the subject tractor-trailer combination at significant danger to all others on the road, Defendants, including Defendant-Toure, acted outrageously, willfully, and wantonly.

91.    As a carrier and/or the actual, authorized, and/or ostensible agent, employee, and/or servant of a carrier, Defendants, including Defendant-Toure, knew or should have known of the requirement to comply with the FMCSR.

92.    However, Defendants, including Defendant-Toure, violated the FMCSR generally and in the following specifics:

    a.  49 C.F.R. § 393.40, et seq., which requires adequate and/or operational brakes;

    b.  49 C.F.R. §396.7, which prohibits unsafe vehicle operation;

    c.  49 C.F.R. §396.3, which requires proper vehicle inspection, repair, and maintenance;

    d.  49 C.F.R. 392.7, which requires proper vehicle inspections and confirmation that vehicular systems are in "good working order";

    e.  49 C.F.R. §395.3, which imposes limits on operator drive times; and

    f.  49 C.F.R. §392.9a, which prohibits vehicle operation without proper permission, authority, and/or licensing.

93.    The FMCSR aims to promote safety in interstate commerce and to set minimum safety requirements for entities that transport property and persons in interstate commerce.

94.    By violating the FMCSR, Defendants, including Defendant-Toure, knowingly and consciously disregarded the minimum safety requirements imposed by federal regulation and/or law and knowingly and consciously disregarded the rights and safety of others, including Plaintiffs.

95.    As a direct and proximate result of the Defendants' negligence, carelessness, recklessness, and outrageousness, as well as the negligence, carelessness, recklessness, and outrageousness of Defendant-Toure, for whom Defendants are responsible, Plaintiff has suffered those injuries and damages, as set forth more fully throughout this Complaint.

96.    In addition, Defendants falsified and/or manipulated service and travel data and/or failed to maintain accurate service and travel data.

97.    After the subject crash, Defendants negligently and/or intentionally spoliated evidence by failing to make both the tractor and the trailer available for inspection by Plaintiffs. Instead of preserve evidence for a complete investigation, Defendants and/or Defendants' actual, authorized, and/or ostensible agents, employees, and/or servants, picked up the subject trailer after the crash and discarded it and/or otherwise made such trailer unavailable to Plaintiffs for inspection.

Due to such negligent and/or intentional spoliation, Plaintiffs seek appropriate sanctions against Defendants including, but not limited to:

    a.  Preclusion of ability to assert defenses to Plaintiffs' claims;

    b.  Preclusion of ability to call witnesses in defense of Plaintiffs' claims;

    c.  Exclusion of evidence in support of defenses to Plaintiffs' claims;

    d.  Adverse inference jury instructions against Defendants; and

    e.  Entry of judgment against Defendants.

WHEREFORE, based on the foregoing, Plaintiff demands *compensatory* and *punitive*

*damages* against Defendant, in an amount in excess of Fifty-Thousand Dollars ($50,000), plus

interest and costs.

## COUNT VI – PUNITIVE DAMAGES

### PLAINTIFFS V. DEFENDANTS

98.    Plaintiffs incorporate herein by reference all the preceding paragraphs of this

Complaint, as if each and every one were individually set forth herein at length.

99.    In addition to the ad damnum clauses above, Plaintiffs hereby plead this Count for

*punitive damages* pursuant to *Wilson, et. al, v. U.S. Security Associates, et. al*, 2017 Pa. Super.

226.

100.    The subject tractor-trailer combination weighed 72,600 pounds – that is, in excess

of 36 tons – at the time of the crash.

101.    The dangerous condition of the subject tractor-trailer combination generally and

the brakes and/or braking system specifically evidences:

    a.  a pattern of neglect;

    b.  a failure to inspect and/or maintain the subject tractor-trailer combination; and/or

    c.  disregard for the rights and safety of others, including Plaintiffs.

102.    Defendants knew or should have known, through the exercise of reasonable care,

that the subject tractor-trailer combination generally and the brakes and/or braking system and its

components specifically were in a dangerous condition, broken, out of adjustment, unsafe, worn out, not properly lubricated, and/or in inoperable conditions.

103. By allowing the subject tractor-trailer combination to be operated on the road at significant danger to all others on the road, Defendants acted outrageously, willfully, and wantonly.

104. As a carrier and/or the actual, authorized, and/or ostensible agent, employee, and/or servant of a carrier, Defendants knew or should have known of the requirement to comply with the FMCSR.

105. However, Defendants violated the FMCSR generally and in the following specifics:

    a.  49 C.F.R. § 393.40, et seq., which requires adequate and/or operational brakes;

    b.  49 C.F.R. §396.7, which prohibits unsafe vehicle operation;

    c.  49 C.F.R. §396.3, which requires proper vehicle inspection, repair, and maintenance;

    d.  49 C.F.R. 392.7, which requires proper vehicle inspections and confirmation that vehicular systems are in "good working order";

    e.  49 C.F.R. §395.3, which imposes limits on operator drive times; and

    f.  49 C.F.R. §392.9a, which prohibits vehicle operation without proper permission, authority, and/or licensing.

106. The FMCSR aims to promote safety in interstate commerce and to set minimum safety requirements for entities that transport property and persons in interstate commerce.

107. By violating the FMCSR, Defendants knowingly and consciously disregarded the minimum safety requirements imposed by federal regulation and/or law and knowingly and consciously disregarded the rights and safety of others, including Plaintiffs.

108.    In addition, Defendants falsified and/or manipulated service and travel data and/or failed to maintain accurate service and travel data.

109.    As a direct and proximate result of the Defendants' negligence, carelessness, recklessness, and outrageousness, Plaintiffs have suffered those injuries and damages, as set forth more fully throughout this Complaint.

WHEREFORE, based on the foregoing, Plaintiff demands *punitive damages* against Defendants, in an amount in excess of Fifty-Thousand Dollars ($50,000), plus interest and costs.


Respectfully submitted,

TERSHEL & ASSOCIATES


Jarrod T. Takah, Esquire
*Attorney for Plaintiffs*

COMMONWEALTH OF PENNSYLVANIA          :    SS:
                                      :
COUNTY OF WASHINGTON                  :

## A F F I D A V I T

Before me, the undersigned authority, personally appeared  Cheryl Lynn Martorana

who being duly sworn according to law, depose(s) and say(s) that the facts set forth in the

foregoing ___Complaint in Civil Action___ are true and correct to the best of

_____her_____ personal knowledge, information and belief, and that

_____she_____ understand(s) that false statements herein are

made subject to the penalties of 18 Pa. C.S. section 4904, relating to unsworn falsification to

authorities.

_Cheryl Lynn Martorana_

SWORN TO AND SUBSCRIBED

Before me this _29th_

Day of _September_ , 20 _17_

_Valie E. Ivery_
NOTARY PUBLIC

MY COMMISSION EXPIRES:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Valerie E. Ivery, Notary Public
City of Washington, Washington County
My Commission Expires July 2, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

## CERTIFICATE OF SERVICE

I, Jarrod T. Takah, Esquire, hereby certify that a true and correct copy of the foregoing Complaint in Civil Action has been served, by the following methods, upon the following individuals, this 29 day of September, 2017:

Via U.S. First Class Mail:          James M. Girman, Esquire
                                    PION, NERONE, GIRMAN
                                    WINSLOW & SMITH, P.C.
                                    1500 One Gateway Center
                                    420 Ft. Duquesne Boulevard
                                    Pittsburgh, PA    15222

Via Certified Mail:                 C.H. Robinson Co. t/d/b/a C.H. Robinson Worldwide
                                    14701 Charlson Road
                                    Eden Prairie, MN 55347

TERSHEL & ASSOCIATES

Jarrod T. Takah, Esquire
*Attorney for the Plaintiffs*